**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**

In re:

**Eddie Lee Washington, Jr.**   Case No. 18-41266
                                Chapter 11
　　　　　Debtor.                Hon. Mark A. Randon
_____/

**DEBTOR'S COMBINED PLAN OF
REORGANIZATION & DISCLOSURE STATEMENT**

**PLAN OF REORGANIZATION**

Eddie Lee Washington, Jr. ("Washington"), an individual resident of State of Michigan, Chapter 11 Debtor and Debtor in Possession proposes the following plan as his Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code. Reference is made to the Debtor's Disclosure Statement ("Disclosure Statement"), which is a portion of this pleading, for (a) a discussion of the Debtor's history,  employment, and financial situation, (b) a summary of significant events which have occurred to date, and (c) a summary of the Plan and certain related matters, including the procedures for voting on the Plan. All holders of Claims against the Debtor who are entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.

**ARTICLE 1
DEFINED TERMS; RULES OF CONSTRUCTION**

　　　　**Defined Terms.** All terms that relate to provisions of the Bankruptcy Code shall have the meaning provided in the Code and such cases that may interpret same.

As used in the Plan, the following terms (which appear in the Plan as capitalized terms) will have the meanings set forth below:

　　　　1.1　　**"Administrative Expense Bar Date"** means the bar date(s) established by this Plan or by separate order of the Bankruptcy Court.

　　　　1.2　　**"Ballot"** means the ballot accompanying the Disclosure Statement upon which holders of Impaired Claims entitled to vote on the Plan will indicate their acceptance or rejection of the Plan.

　　　　1.3　　**"Bar Date"** means the bar date to be established by the Bankruptcy Court as the last day for filing Proofs of Claim against, the Debtor, including with respect to executory contracts and unexpired leases that are rejected pursuant to the Plan or otherwise pursuant to §365 of the Bankruptcy Code, which date shall be established by the order of such court, notice of which will then be provided to all parties in interest.

1.4     **"Business Day"** means any day other than a Saturday, Sunday, or "legal holiday" as such term is defined in F.R.B.P. 9006(a).

1.5     **"Claim"** has the meaning ascribed to such term in §101(5) of the Bankruptcy Code. Notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Claim" will be given the broadest possible meaning permitted by applicable law and will include all manner and type of claim, whenever and wherever such claim may arise. As used in the Plan, the term "Claim" also includes a Claim against any Affiliate, the holder of which holds or believes it holds a Claim against the Debtor.

1.6     **"Class"** means a category of Claims as described in Article 2 of this Plan.

1.7     **"Clerk's Office"** means the Office of the Clerk of the Bankruptcy Court located at 211 West Fort Street, Detroit, Michigan 48226.

1.8     **"Confirmation"** or **"Confirmation of the Plan"** means the approval of the Plan by the Bankruptcy Court by entry of the Confirmation Order.

1.9     **"Confirmation Date"** means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court pursuant to F.R.B.P. 5003(a).

1.10    **"Confirmation Hearing"** means the hearing(s) which will be held before the Bankruptcy Court pursuant to § 1128(a) of the Bankruptcy Code in which the Debtor will seek Confirmation of the Plan. The confirmation hearing will be scheduled on a date and time to be determined by the court.

1.11    **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to § 1129 and other applicable sections of the Bankruptcy Code, as it may be amended.

1.12    **"Debtor"** means Eddie Lee Washington, Jr.

1.13    **"Debtor in Possession"** means Eddie Lee Washington, Jr., in his capacity as a debtor in possession under the applicable provisions of the Bankruptcy Code.

1.14    **"Disclosure Statement"** means the Debtor's Disclosure Statement portion of this pleading under Chapter 11 of the United States Bankruptcy Code, including all exhibits, appendices, and schedules attached thereto, as filed by the Debtor pursuant to § 1125 of the Bankruptcy Code and approved by the Bankruptcy Court, as such Disclosure Statement may be further amended, supplemented, or modified from time to time.

1.15    **"Distribution Date"** means the date selected by the Debtor in Possession (as defined above) for any distribution to holders of Claims.

-2-

18-41266-mar    Doc 68    Filed 06/15/18    Entered 06/15/18 15:00:06    Page 2 of 14

1.16 **"Effective Date"** means that date sixty (60) days after the Confirmation Order becomes a Final Order and no longer subject to a timely appeal. If a timely appeal is filed, the Effective Date shall be sixty (60) days after the date on which it is determined that such appeal does not stay the consummation of this Plan.

1.17 **"Liabilities"** means any and all liabilities, obligations, judgments, damages, charges, costs, debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtor or any Affiliate, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the date the case is closed that in any way relate to the Debtor or any Affiliate, successor or assign thereof, any other assets of the Debtor, the business or operations of the Debtor, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory.

1.18 **"Petition Date"** means the date the Voluntary Petition was filed on behalf of Eddie L. Washington, Jr., which is January 31, 2018.

1.19 **"Plan"** means this Plan of Reorganization, as the Plan may be further amended, supplemented, modified, amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

1.20 **"Reorganized Debtor"** means the Debtor on and after the Effective Date as reorganized pursuant to the Plan.

## ARTICLE 2
## DESIGNATION OF CLASSES OF CLAIMS

2.1 **Class 1: Accrued Unsecured Claims**

Class 1 shall consist of all allowed non-priority unsecured claims that have accrued against the Debtor and rejection damages. Class 1 shall not consist of unsecured claims that have not accrued.

2.2 **Class 2: Unaccrued Unsecured Claims**

Class 2 shall consist of all allowed non-priority unsecured claims that have not accrued against the Debtor, including, without limit, under-secured portions of secured claims, if any, and student loan payment obligations that are deferred.

# ARTICLE 3
# TREATMENT OF CLAIMS THAT ARE NOT CLASSIFIED
# AND ARE NOT ENTITLED TO VOTE ON THE PLAN

3.1 **Group 1**

Except as otherwise provided in this Section, each allowed Administrative Claim not incurred in the ordinary course of business of the Debtor in Possession shall be paid (a) in full, in cash, on or before the later of (i) the Effective Date or (ii) ten (10) days after the date the order allowing such Administrative Claim becomes a Final Order, or (b) under such other terms as may be agreed upon by both the holder of such Administrative Claim and the Debtor in Possession or the Reorganized Debtor (as the case may be).

Administrative Expense Claims representing obligations incurred in the ordinary course of business of the Debtor in Possession shall be paid by the Debtor in accordance with ordinary business terms or the terms and conditions of any governing agreement or other applicable law relating thereto.

3.2 **Group 2**

There are no known secured tax priority claims. To extend that there are such secured priority tax claims they will be paid in total value as of the effective date of the plan equal to the allowed amount of their respective claim for a period not to end later than 5 years of the entry of the order for relief or 5 years from the actual date liability was assessed.

3.3 **Group 3**

To the extent that there are unsecured priority tax claims they will be paid in total value as of the effective date of the plan equal to the allowed amount of their respective claim for a period not to end later than 5 years of the entry of the order for relief or 5 years from the actual date liability was assessed.

3.4 **Group 4**

Group 4 are general unsecured claims related to student loans that will not accrue until post confirmation. These Creditors are unimpaired under the Plan. They consist of all non-priority unsecured claims that have not accrued against the Debtor, including, without limit, under-secured student loan payment obligations that are deferred. These creditors will receive 100% of their claim in accordance with the Debtor's underlying liability obligations.

3.5 **Group 5**

Group 5 Creditor Dearborn Federal Credit Union's claims are un-impaired. Dearborn Federal Credit Union (Vehicle Liens) has a first lien on two of Debtor's vehicles. The 2010 Honda balance owed to creditor is approximately four thousand dollars ($4,000.00). A retail installment sales contract dated December 23, 2014, is the written agreement between the Debtor and the Creditor.

The 2012 Honda balance owed to creditor is approximately eight thousand seven five hundred dollars ($8,500.00). A retail installment sales contract dated December 31, 2014, is the written agreement between the Debtor and the Creditor. Since the filing of the bankruptcy proceeding, the Debtor has made his payment obligations to Creditor on both vehicles. Upon Confirmation, the contract will be deemed reaffirmed and the Debtor will continue to pay his obligations as set forth in the referenced contract. This creditor will be paid one hundred percent (100%) of its allowed claim.

## ARTICLE 4
## TREATMENT OF CLAIMS THAT ARE IMPAIRED UNDER THIS PLAN

4.1     **Class 1: 29838 Stanhurst Rd., Ditech Mortgage**

Class 1 Creditor Ditech Mortgage's secured claim is impaired. The allowed secured claim of Ditech, which is secured by a first mortgage on residential property located at 29838 Stanhurst, Farmington Hills, Michigan, 48331, will be paid in equal monthly payments in an amount sufficient to amortize the allowed claim over a thirty-year period with interest at the rate of 3.5% per annum. Payments will commence on the first day of the month following the Effective date and will continue for 5 years thereafter. A balloon payment in the amount of then principle balance shall be paid on the 5th-year anniversary. All real estate taxes shall be paid when due and the Debtor shall maintain insurance on the property and provide that the secured creditor is an insured beneficiary of its interest in its collateral.

4.2     **Class 2: 29838 Stanhurst Rd., Bank of America**

Class 2 Creditor Bank of America's secured claim is impaired. The allowed secured claim of Bank of America, which is secured by a second mortgage on residential property located at 29838 Stanhurst, Farmington Hills, Michigan, 48331, will be paid in equal monthly payments in an amount sufficient to amortize the allowed claim over a thirty-year period with interest at the rate of 3.5% per annum. Payments will commence on the first day of the month following the Effective date and will continue for 5 years thereafter. A balloon payment in the amount of then principle balance shall be paid on the 5th-year anniversary. All real estate taxes shall be paid when due and the Debtor shall maintain insurance on the property and provide that the secured creditor is an insured beneficiary of its interest in its collateral.

4.3     **Class 3: 28500 Lincolnview Dr., Fifth Third**

Class 3 Creditor Fifth Third Bank's secured claim is impaired. The allowed secured claim of Fifth Third Bank, which is secured by a first mortgage on residential property located at 28500 Lincolnview Dr., Farmington Hills, Michigan 48334, will be paid in equal monthly payments in an amount sufficient to amortize the allowed claim over a thirty-year period with interest rate at the rate of 3.5% per annum. Payments will commence on the first day of the month following the Effective date and will continue for 5 years thereafter. A balloon payment in the amount of then principle balance shall be paid on the 5th-year anniversary. All real estate taxes shall be paid when due and the Debtor shall maintain insurance on the property and provide that the secured creditor is an insured beneficiary of its interest in its collateral.

4.4    **Class 4: 28500 Lincolnview Dr., Huntington National Bank, as successor**

Class 4 Creditor Hunting National Bank's claim is impaired. The allowed secured claim of Huntington National Bank, which is secured by a second mortgage on residential property located at 28500 Lincolnview Dr., Farmington Hills, Michigan 48334, will be paid in equal monthly payments in an amount sufficient to amortize the allowed claim over a thirty-year period with interest rate at the rate of 3.5% per annum. Payments will commence on the first day of the month following the Effective date and will continue for 5 years thereafter. A balloon payment in the amount of then principle balance shall be paid on the 5th-year anniversary. All real estate taxes shall be paid when due and the Debtor shall maintain insurance on the property and provide that the secured creditor is an insured beneficiary of its interest in its collateral.

4.5    **Class 5: 2530 Dunbar Dr., Bank of America**

Class 5 Creditor Bank of America's claim is impaired. The allowed secured claim of Bank of America, which is secured by a first mortgage on residential property located at 2530 Dunbar Dr., Lansing, Michigan 48906, will be paid in equal monthly payments in an amount sufficient to amortize the allowed claim over a thirty-year period with interest rate at the rate of 3.5% per annum. Payments will commence on the first day of the month following the Effective date and will continue for 5 years thereafter. A balloon payment in the amount of then principle balance shall be paid on the 5th-year anniversary. All real estate taxes shall be paid when due and the Debtor shall maintain insurance on the property and provide that the secured creditor is an insured beneficiary of its interest in its collateral.

4.6    **Class 6: 24530 Lyndon, Bank of New York Mellon, as Trustee for Harborview**

Class 6 Creditor Bank of New York Mellon, as trustee for Harborview's claim is impaired. The allowed secured claim of Bank of New York Mellon, as Trustee for Harborview, which is secured by a first mortgage on residential property located at 24530 Lyndon, Redford, Michigan 48239, will be paid in equal monthly payments in an amount sufficient to amortize the allowed claim over a thirty-year period with interest rate at the rate of 3.5% per annum. Payments will commence on the first day of the month following the Effective date and will continue for 5 years thereafter. A balloon payment in the amount of then principle balance shall be paid on the 5th-year anniversary. All real estate taxes shall be paid when due and the Debtor shall maintain insurance on the property and provide that the secured creditor is an insured beneficiary of its interest in its collateral.

4.7    **Class 7: Yewl-Ce-Y, LLC**

Class 7 Creditor is Chase Bank and arises out of a guarantee obligation of the Debtor on a commercial secured loan owed by an entity known as Yewl-Ce-Y, Inc. The allowed claim of Chase Bank, which is secured by a first mortgage on commercial property located at 8020 W. McNichols, and which debt was guaranteed by Debtor, will be paid in equal monthly payments in an amount sufficient to amortize the allowed claim over a thirty-year period with interest rate at the rate of 3.5% per annum. Payments will commence on the first day of the month following

the Effective date and will continue for 5 years thereafter. A balloon payment in the amount of then principle balance shall be paid on the 5th-year anniversary. All real estate taxes shall be paid when due and the Debtor shall maintain insurance on the property and provide that the secured creditor is an insured beneficiary of its interest in its collateral. Yewl-Ce-Y, Inc. is in default and therefore creditor is asserting a claim against the Debtor for payments on its note.

4.8 **Class 8: Time Share Lagunamar Cancun Mexico, Inc.**

Class 3 Creditor Langunamar Cancun Mexico, Inc.'s secured claim is impaired. The allowed secured claim of Langunamar Cancun Mexico, Inc. will be paid in equal monthly payments in an amount sufficient to amortize the allowed claim over a thirty-year period with interest rate at the rate of 3.5% per annum. Payments will commence on the first day of the month following the Effective date and will continue for 5 years thereafter. A balloon payment in the amount of then principle balance shall be paid on the 5th-year anniversary.

4.9 **Class 9: Unsecured Claims that have accrued**

The Class 9 Creditors are impaired under the Plan. These creditors will receive 100% of their allowed claim of an amount due on the Petition Date paid over five years in equal monthly payments (without interest and without the payment of attorney fees or costs).

## ARTICLE 5
## EXECUTORY CONTRACTS

5.1 **Assumption of Executory Contracts**

Upon confirmation of this Plan the following executory contracts will be reaffirmed:
    a.    Ditech Mortgage (29838 Stanhurst, Farmington Hills);
    b.    Bank of America (29838 Stanhurst, Farmington Hills);
    c.    Fifth Third Bank (28500 Lincolnview Dr., Farmington Hills);
    d.    Huntington National Bank (28500 Lincolnview Dr., Farmington Hills);
    e.    Bank of America (2530 Dunbar Dr. Lansing);
    f.    Bank of New York Mellon (24530 Lyndon, Redford);
    g.    Lagunamar Cancun Mexico, Inc. (Time-Share);
    h.    Dearborn Federal Credit Union (2010 Honda);
    i.    Dearborn Federal Credit Union (2012 Honda);

## ARTICLE 6
## MEANS OF EXECUTION OF PLAN

6.1 **Determination of Claims**

Unless otherwise ordered by the Bankruptcy Court, and except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than sixty (60) days after

the Effective Date. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed by the later of (a) sixty (60) days after the Effective Date or (b) the date sixty (60) days after the Debtor or other parties in interest receive actual notice of the filing of such Claim.

Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a Contingent or Unliquidated Claim would cause undue delay in the administration of the Reorganization Cases, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and distribution. Upon receipt of a timely-filed Proof of Claim, the Debtor, or other party in interest, may file a request for estimation along with their objection to the Claim set forth therein. The determination of Claims in estimation hearings shall be final and binding for purposes of establishing the maximum amount of the Claims for purposes of allowance and distribution. Procedures for specific estimation hearings, including provision for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the disputed Claim.

6.2    **Means of Implementation**

On the effective date the Debtor's assets shall remain in the Debtor's possession and control. The Debtor intends on continuing to be gainfully employed. The Debtor anticipates that based on his projected monthly income there will be sufficient funds available to pay all of his Plan obligations.

6.3    **Unclaimed Distributions**

If the Holder of an Allowed Claim fails to negotiate a check issued to such holder within ninety (90) days of the date such check was issued, the amount of cash attributable to such check shall be deemed to be unclaimed.

If a distribution pursuant to the Plan to any holder of an Allowed Claim is returned to the Reorganized Debtor, due to an incorrect or incomplete address for the holder of such Allowed Claim, and no claim is made in writing to the Reorganized Debtor, as the case may be, as to such distribution within forty-five (45) days of the return of such distribution, then the amount of cash attributable to such distribution shall be deemed to be unclaimed.

Any distribution that remains unclaimed sixty (60) days prior to the final distribution date together with any final distribution due shall be deemed forfeited.

6.4    **Effective Date**

The Effective Date of this Plan shall be that date sixty (60) days after the Confirmation Order becomes a Final Order and is no longer subject to a timely appeal. If a timely appeal is filed the Effective Date shall be sixty (60) days after the date on which it is determined that such appeal does not stay the consummation of this Plan.

6.5  **Notices**

All notices required by the Plan shall be in writing, addressed as follows:

    If to Debtor:
        Eddie Lee Washington, Jr.
        29838 Stanhurst Rd
        Farmington Hills, MI 48331

    With Copy to:
        Matthew W. Frank
        30833 Northwestern Hwy, Suite 205
        Farmington Hills, MI 48334

6.6  **Preservation of Causes of Action**

Notwithstanding anything contained herein to the contrary, confirmation of the Plan shall not act as a release, waiver, extinguishment, or forfeiture of any cause of action asserted or assertable by the Debtor prior to the Effective Date, which claims include but are not limited to any and all claims under Chapter 5 of the Bankruptcy Code and various causes of action which may exist against. This claim is preserved by the plan.

6.7  *De Minimus* **Distributions**

To avoid the disproportionate expense and inconvenience associated with making distributions in amounts of less than $50.00 each, with respect to Allowed Unsecured Claims, the Reorganized Debtor shall be excused from making distributions in amounts of less than $50.00 each and can accumulate the distribution until an amount greater than $50.00 is due. If less than $50.00 remains due at the time of final distribution for such claim a distribution will be made in such lesser amount.

6.8  **Transfer taxes or fees**

The loans, transfers and assignments, set forth herein and authorized by Order of Court, are in contemplation and furtherance of the confirmation of the Plan of Reorganization. Therefore, pursuant to Section 1146(c), of the Bankruptcy Code, the making and delivery of the instruments of transfer to effectuate the vestment and transfer of any property shall not be taxed under any law imposing any recording, registration, intangible, or documentary stamp tax or fee, or a similar tax or fee including any applicable transfer taxes or fees, sales taxes or mortgage recording taxes or fees.

**6.9  Retention of jurisdiction**

Until the Effective Date, the Debtor shall remain subject to the Bankruptcy Case under Chapter 11 of the Bankruptcy Code, and the Bankruptcy Court shall retain its jurisdiction therein. Thereafter, the Bankruptcy Court shall retain jurisdiction only for the following purposes:

1. The determination of the classification of any Claim under the Plan, the re-examination of the Claims which have been allowed for purposes of voting, and the determination of objections to Claims. The failure of the Debtor to object to or to examine any Claim for the purposes of voting shall not be deemed to be a waiver of the rights of the Debtor to object to or to re-examine the Claims in whole or in part.

2. The determination and allowance of compensation to those persons entitled to receive compensation for services rendered prior to the Effective Date pursuant to the Bankruptcy Code.

3. The determination of all questions and disputes regarding title to the assets of the estate, and the determination of all causes of action, controversies, disputes or conflicts preserved in this Plan, including, but not limited to, causes of action under Chapter 5 of the Bankruptcy Code, whether or not subject to any action pending as of the Confirmation Date, between the Debtor and any other party.

4. The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

5. The modification of this Plan after the Confirmation Date.

6. The enforcement and interpretation of the terms and conditions of this Plan.

7. The entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to enforce the provisions of the Plan as the Bankruptcy Court may deem necessary. In the event a secured creditor fails to tender a discharge of their lien or mortgage on any of the assets of the Debtor when funds are tendered in accordance with this Plan, this Court shall entertain a motion to enforce the applicable provisions of this Plan on an expedited basis.

8. The determination of whether a default has occurred under this Plan, and the making of such orders as the Bankruptcy Court deems necessary to enforce the provisions of this Plan, including, but not limited to, ordering the modification of the Plan.

## **DISCLOSURE STATEMENT**

### **Description of the Debtor**

A. Eddie Lee Washington, Jr., the Debtor, is an individual resident of the State of Michigan, in Oakland County. The Debtor is 56 years old, is currently an executive at the University of Michigan after working 27 years as a Michigan State Trooper. He resides in Farmington Hills, Michigan, with one of his daughters. He has two additional children who are grown and live away from the house; however, he still assists them financially from time to time. He has been employed by the University of Michigan in his current position since July 23, 2013. The Debtor also receives a pension income from the State of Michigan as a result of retiring as a Michigan State Trooper. The Debtor's income is fixed salary and his pension is fixed. The Debtor

currently is involved in a divorce proceeding that will affect his income, as it is likely the Debtor will be required to provide spousal support for some period. The projections attached are an accurate estimate of the Debtor's income and expenses. The expenses on the attached projection reflect the expenses the Debtor believes he will have when he emerges from the divorce proceeding.

  B. <u>Description of the principles</u>: n/a

  C. <u>Description of business, industry and causes for the Chapter 11 filing</u>: Over the last several years, the Debtor attempted to help family members and friends out that were facing financial struggles. As a result, he purchased two houses with the intention that the tenants would purchase the properties in the near future. The Debtor also guaranteed a substantial liability on a business loan related to a family business. The Debtor has been unable to dispose of the assets due to the real estate market, and the financial abilities of his tenants to get financing. The Debtor found himself having a hard time paying all his obligations as he tried to keep all his obligations afloat. Prior to the filing of the bankruptcy proceeding, the Debtor fell behind on his various mortgage obligations and one of the lenders began to institute foreclosure proceedings. On the eve of the foreclosure this bankruptcy proceeding was filed. The bankruptcy proceeding was filed to allow the Debtor to orderly pay back his financial obligations in full. This plan proposes 100% pay back to all allowed claims.

## Post-petition events of significance

  A. All post-petition transfers outside the ordinary course of business: N.A.

  B. Summarize details of cash collateral, post petition financing and adequate protection:  There are none.

  C. Explain any litigation arising or continuing during the case, or which may be pending in any court: The Debtor is currently a party to a divorce proceeding pending in Oakland County Circuit Court as Case No. 2017-854765-DM. The matter is currently scheduled for trial prior to the confirmation of this plan. The Debtor does not believe the divorce proceeding will have any negative impact on his plan obligations as set forth.

## Assets and liabilities

  A. Liquidation analysis: See **Exhibit A**.

  B. <u>State the risks, conditions and assumptions regarding the stated values</u>. The value of the real estate is a good faith estimate by the Debtor, but it is acknowledged that the present real estate market is in fluctuation, although values are expected to increase in the future. Another risk is the Debtor's employment; although, the Debtor does not anticipate any future disruptions.

-11-

18-41266-mar Doc 68 Filed 06/15/18 Entered 06/15/18 15:00:06 Page 11 of 14

C.  <u>Identify all potential claims and causes of action, including claims against insiders and avoidance actions. If causes exist estimate value and if the Debtor does not wish to pursue state the reason.</u>  The Debtor does not believe that there are any claims that exist that have not been described in the plan of reorganization above.

D.  <u>List and describe the priority claims including anticipated administrative expense claims of all types.</u>
    1. Anticipated Administrative expenses include Debtor's legal fees and accounting fees which are estimated to be approximately $25,000.

E.  <u>Provide a total of all non-priority unsecured claims.</u>  The Total non-priority unsecured claims is $404,150.68.

F.  Guarantors and co-debtors.  The Debtor's spouse, Lisa Washington, is a co-obligor on the mortgage obligations as they relate to 28500 Lincolnview Dr., Farmington Hills, Michigan 48334-5248, including the mortgages held by Fifth Third Bank in an amount of $253,022.00 and Huntington National bank in an amount of $66,079.  Lisa Washington is also a co-obligor on some older personal income taxes owed to the Internal Revenue Service, as well as certain of the non-priority unsecured obligations.

### Details regarding implementation of the plan

A.  Provide financial summaries for the following:
  1. <u>Three years pre-petition</u>.  See **Exhibit B**.
  2. <u>Post-Petition to Date</u>.  See **Exhibit C**
  3. <u>If the plan proposes that the Debtor will continue to be employed, projections for the period of payment proposed by the plan together with assumptions underlying those projections</u>.  See **Exhibit D**.
B.  <u>State who will be in charge of debtor</u>: The Debtor in his individual capacity.
C.  <u>State the tax ramifications for the continuing entity if the plan is confirmed</u>.  There are no known adverse tax consequences arising out of the confirmation of the plan.

### Legal requirements, as follows:

A.  Voting procedures

Under the Bankruptcy Code, the only classes that are entitled to vote to accept or reject a plan are classes of claims, or equity interest, that are impaired under the plan. Accordingly, classes of claims or interests that are not impaired are <u>not</u> entitled to vote on the plan.

Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a creditor will receive a separate ballot for all of its claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A creditor who asserts a claim in more than one class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.

Votes on the plan will be counted only with respect to claims: (a) that are listed on the Debtor's Schedules of Assets and Liabilities other than as disputed, contingent or unliquidated; or (b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order). However, any vote by a holder of a claim will not be counted if such claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 U.S.C. § 502 and Bankruptcy Rule 3018.

Voting on the plan by each holder of a claim or interest in an impaired class is important. After carefully reviewing the plan and disclosure statement, each holder of such a claim or interest should vote on the enclosed ballot either to accept or to reject the plan, and then return the ballot by mail to the debtor's attorney by the deadline previously established by the court.

Any ballot that does not appropriately indicate acceptance or rejection of the plan will not be counted.

A ballot that is not received by the deadline will not be counted.

If a ballot is damaged, lost, or missing, a replacement ballot may be obtained by sending a written request to the Debtor's attorney.

B.  Acceptance

The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots. The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of the equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has not accepted the plan.

C.  Confirmation

11 U.S.C. § 1129(a) establishes conditions for the confirmation of a plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process.

Among the several conditions for confirmation of a plan under 11 U.S.C. § 1129(a) are these:
1.  Each class of impaired creditors and interest must accept the plan, as described in the Legal Requirement paragraph B above.
2.  Either each holder of a claim or interest in a class must accept the Plan, or the Plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.

D.  Modification

The Debtor reserves the right to modify or withdraw the Plan at any time before confirmation.

E.  Effect of confirmation

If the Plan is confirmed by the Court:
1. Its terms are binding on the Debtor, all creditors and other parties in interest, regardless of whether they have accepted the plan.

2. Except as provided in the plan and in 11 U.S.C. § 1141(d)(5):
   (a) In the case of a corporation that is reorganizing and continuing business:
      (1) All claims and interests will be discharged.
      (2) Creditors and shareholders will be prohibited from asserting their claims against or interest in the debtor or its assets.

Dated this 15th day of June, 2018
On behalf of the Debtor,

/s/Eddie Lee Washington, Jr.
By:  Eddie Lee Washington, Jr.
In his individual capacity